IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| SHERRY LYNN GORTNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:16-cv-00927-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Sherry Lynn Gortney, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 33, 37.) Her past work experiences include employment as a cashier, housekeeper, and kennel worker. (Tr. at 56-57.) Plaintiff claims that she became disabled on

1

September 15, 2010, due to back and knee pain, asthma, allergies, and numbness in her arms and legs. (Tr. at 73.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. (Tr. at 16.) She further determined that Plaintiff has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's lumbar degenerative changes and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 17.) The ALJ did not find Plaintiff's allegations to be completely credible, and she determined that Plaintiff has the following RFC: medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) except with a sit/stand option; no overhead reaching with right arm/shoulder; and no concentrated exposure to dust, odors, fumes, or gases. (*Id.*)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work, she is a "younger individual aged 18-49" she has a "high school education," and she is able to "communicate in English," as those terms are defined by the regulations. (Tr. at 24-25.) Because Plaintiff cannot perform the full range of medium work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 204.00 as a guideline for finding that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as ticket seller, folder, and electrical assembly. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 26.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Plaintiff alleges that the ALJ's decision should be reversed or remanded for three reasons. First, she contends that the ALJ erred at step two of the sequential evaluation process by failing to find additional impairments severe. Second, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Third, Plaintiff contends that the ALJ did not afford proper consideration to her subjective complaints of pain.

**A. Finding of Additional Severe Impairments at Step Two**

For an impairment to be considered severe at step two of the sequential evaluation process, it must significantly limit a claimant's abilities to do basic work activities. 20 C.F.R. § 416.920(c). At step two in this case, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative changes and obesity. (Tr. at 16-17). The ALJ thus found in Plaintiff's favor at step two and proceeded with the sequential evaluation process. (Tr. at 17-26).

Plaintiff argues the ALJ should have also found carpal tunnel syndrome, right shoulder arthritis, and a prior left ankle injury to be severe at step two. However,

any error at step two is harmless because the ALJ found in Plaintiff's favor, as explained by the Eleventh Circuit:

> At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.

*Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate [he] has considered all of the claimant's impairments, whether severe or not, in combination." *Id.* at 825.

In this case, the ALJ did go on to evaluate Plaintiff's allegations of carpal tunnel syndrome, right shoulder arthritis, and a prior left ankle injury in assessing Plaintiff's RFC at step four. (Tr. at 17-24.) Accordingly, even putting aside the fact that any alleged error at step two is harmless, substantial evidence supports the

ALJ's conclusion that Plaintiff could perform her RFC despite these three alleged impairments.

For example, despite Plaintiff's allegations of carpal tunnel, the ALJ noted that during a consultative examination with Dr. David Gordon in October 2004, Plaintiff had full grip strength and full range of motion in her wrists. (Tr. at 18, 231). Later, at another consultative examination in March 2008, Dr. Joanna Hannah noted that Plaintiff had full strength in her upper extremities. (Tr. at 19, 237). While, as the ALJ acknowledged, Dr. Gary Howard did diagnose Plaintiff with carpal tunnel syndrome at during an examination in December 2009, a diagnosis alone does not indicate limitations on a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of [] impairments does not reveal the extent to which they limit [a claimant's] ability to work . . . ."). In any event, Plaintiff underwent another consultative examination, this time with Dr. James Lott in October 2013, and he found that Plaintiff had normal dexterity and grip strength in her hands. (Tr. at 20, 254, 269). Similarly, during a presentation to an emergency room in April 2012 for wheezing and asthma, Plaintiff had no tenderness and normal range of motion in her extremities. (Tr. at 245). She could move all extremities and no limitations were noted. (Tr. at 246). Additionally, Plaintiff stated in a function report that one of her

hobbies was sewing, which obviously involves working with one's hands. (Tr. at 203-04).

With regard to Plaintiff's alleged right shoulder arthritis, Dr. Gordon noted in October 2004 that Plaintiff had full range of motion and normal strength in her shoulders. (Tr. at 18-19, 231). Dr. Hannah noted in March 2008 that Plaintiff had normal muscle bulk and tone, normal strength in her upper extremities, and normal sensation. (Tr. at 19, 237). Plaintiff's shoulders had no abnormalities at that time. (Tr. at 236.) Dr. Howard diagnosed Plaintiff with shoulder pain in December 2009. (Tr. at 20, 268). However, Plaintiff had non-tender extremities and was able to move all her extremities in April 2012. (Tr. at 246). Likewise, in October 2013, Dr. Lott noted that Plaintiff had normal extremities upon examination and no joint deformities. (Tr. at 20, 254). Plaintiff had normal muscle strength and sensation in her arms. (Tr. at 254). Plaintiff had slight limitations in range of motion in her right shoulder and normal range of motion in her left. (Tr. at 262). The ALJ specifically incorporated limitations from Plaintiff's right shoulder impairment into her RFC, finding that she could not perform overhead reaching with her right arm/shoulder. (Tr. at 17.)

Finally, with regard to Plaintiff's ankle injury, the ALJ noted that she sustained the injury in 2001 and that it required surgery and plates and screws to

repair, but she continued to work for years after this injury occurred. (Tr. at 37, 230). At her 2004 examination with Dr. Gordon Plaintiff stated that her ankle was not her main problem. (Tr. at 230). Plaintiff also had normal strength in her lower extremities when examined by Dr. Hannah in 2008. (Tr. at 237). Plaintiff had non-tender extremities and she could move all of her extremities when she was examined in 2012. (Tr. at 246). In 2013, Dr. Lott found that Plaintiff's gait was slow, but unassisted and normal, and that her extremities were normal. (Tr. at 20, 254). During the same examination in 2013, no deformities were noted, and Plaintiff's ranges of motion were all normal in both ankles. (Tr. at 254, 261).

Accordingly, Plaintiff's argument that the ALJ erred by failing to consider additional impairments severe at step two is meritless, and indeed, the ALJ accounted for and discussed each of these three impairments in assessing Plaintiff's RFC.

### B. RFC Determination

Plaintiff's primary argument with respect to her RFC assessment is that an ALJ must adopt a medical source's opinion in assessing a claimant's RFC, and in failing to do so in this case, the ALJ erred. However, her contention is belied by the regulations and case law.

A claimant's RFC is the most she can still do despite her limitations and is based on an evaluation of all the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3). The Social Security Act specifically provides that the Commissioner of Social Security is responsible for deciding whether a claimant is disabled or not disabled. *See* 42 U.S.C. § 405(b)(1). In accordance with the Act, the Commissioner has established that when a claimant appeals to the hearing level, the ALJ is responsible for determining whether the claimant is disabled or not disabled. *See* 20 C.F.R. §§ 404.929, 404.944, 404.946, 404.953, 404.955. Although an ALJ will consider opinions from acceptable medical sources on such issues as whether a claimant is disabled and a claimant's RFC, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see* SSR 96-5p. The regulations even state that requiring an ALJ to adopt a medical source's opinion "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *See* 96-5p, at *2. Thus, any argument that the ALJ was not qualified to interpret the medical record in this case is meritless.

In any event, substantial evidence supports the ALJ's finding that Plaintiff could perform medium work with additional restrictions. At the few examinations

Plaintiff underwent over the course of nearly ten years, examination findings were relatively normal. The ALJ specifically noted that during Dr. Gordon's 2004 consultative exam, while he noted that she was morbidly obese and had some back and knee pain, Plaintiff had no swelling in any joint area, full range of motion in her ankle, shoulders, elbows, wrists, and hands, full extension in her shoulders, hips, knees, and ankles, and intact sensation. (Tr. at 18, 231-32.) The ALJ also noted that Plaintiff was able to perform finger-to-nose exercises without difficulty during Dr. Hannah's 2008 consultative exam, and Plaintiff had no muscle spasms on palpitation in her spine, negative straight leg raises, no joint deformity, normal muscle bulk and tone, and full muscle strength at that time. (Tr. at 19, 235-37.) Plaintiff reported to Dr. Hannah that while she did take time to rest, she spent her days doing chores like dishes and laundry. (Tr. at 19, 234.) While Dr. Howard diagnosed Plaintiff with carpal tunnel syndrome in 2009 and also recommended breast reduction surgery, he did not indicate that these issues would severely limit her ability to perform work activities. (Tr. at 267.) The ALJ also took note that when Plaintiff was examined in 2012, Plaintiff's extremities were non-tender with normal range of motion. (Tr. at 245-46.) She again reported activities of daily living that required some exertion, such as light cleaning. (Tr. at 246.) Additionally, the ALJ considered that during Dr. Lott's 2013 exam Plaintiff could walk slowly, but

normally and without assistance; her gait was normal; she had no joint deformities; she could move all her extremities; and she had normal grip strength and muscle strength. (Tr. at 20, 245-46, 253-254.) Dr. Lott's impressions were that Plaintiff had mild asthma exacerbated with tobacco use, morbid obesity and degenerative joint disease. (Tr. at 253-54.) He opined that her limitations as far as mobility were minimal. (*Id.*)

In addition to the medical evidence, and as discussed by the ALJ, Plaintiff's daily activities further support her RFC finding. *See* 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3), 416.927(c)(4), 416.929(c)(3); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (affirming ALJ determination that claimant's claims of work impairment could not be squared with her ability to care for herself and manage daily activities of childcare and housework). In Plaintiff's function report, she reported that she could perform personal care, she could prepare simple meals by using the microwave, and she washed her own clothes. (Tr. at 23, 200-01.) Additional activities that showed Plaintiff's abilities included shopping, handling money, reading, sewing, and working puzzle books, as the ALJ noted. (Tr. at 202-03.) Plaintiff could pay attention, finish what she began, and could follow written and spoken instructions. (Tr. at 203-05.) These activities, in conjunction with

medical evidence, were taken into consideration by the ALJ when she determined Plaintiff's RFC.

### C. Plaintiff's Allegations of Pain

At her hearing, Plaintiff testified, among other things, that when she wakes up in the morning her pain is at a level 2 out of 10. (Tr. at 48). She said that basically any activity causes her pain to increase. (*Id.*) She said that simply preparing her breakfast causes her pain to increase to a level 5 and she then has to rest. (*Id.*) By the afternoon, her pain level is at a 7 or 8. (Tr. at 53). At that point, she is unable to concentrate due to her pain level. (*Id.*) Her pain stays at that level until she goes to bed at night. Sometimes, her pain is so intense that she cries herself to sleep. (*Id.*)

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p;[1]

---

[1] Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding

15

*Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore*, 405 F.3d at 1212 n.4. When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ partially credited Plaintiff's statements to the extent that she limited her RFC to a reduced range of medium work with a sit/stand option and no reaching with her right arm. (Tr. at 22-23.) However, the ALJ found Plaintiff's remaining statements were not reliable because they were inconsistent with Plaintiff's medical records, her daily activities, her lack of treatment, her sporadic work history, and her demeanor and appearance at the hearing.

---

symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

Substantial evidence supports the ALJ's credibility determination here. Despite Plaintiff's claims of severe back, shoulder, ankle, and hand limitations, she received normal evaluations on most of the few examinations she underwent. Despite how intense Plaintiff claimed the pain was, she did not frequently seek treatment and she was not taking pain medication. *See* SSR 16-3p ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record). Also noted by the ALJ was Plaintiff's sporadic employment history. While Plaintiff argues that the ALJ should not have considered her poor work history, the regulations specifically instruct the ALJ to consider "information about [a claimant's] prior work record." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability"); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (noting claimant's poor work history may be probative evidence regarding the credibility of claimant's allegations).

Moreover, the ALJ's personal observations support her assessment of Plaintiff's subjective allegations. The ALJ noted:

> Another factor influencing the conclusions reached in this decision is [Plaintiff]'s generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of [Plaintiff]'s allegations and [Plaintiff's RFC].
>
> [Plaintiff] betrayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of [Plaintiff]'s overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of [Plaintiff]'s allegations and [Plaintiff's RFC].

(Tr. at 24). Plaintiff argues that the ALJ improperly engaged in "sit and squirm" jurisprudence. "Sit and squirm" jurisprudence is a phrase used to denote an ALJ's denial of a claim based on the claimant's failure to exhibit certain traits the ALJ has subjectively determined would exist if the claimant were truly disabled. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). While "sit and squirm" jurisprudence is a forbidden basis to determine a claimant's disability, an ALJ is not prohibited from *considering* a claimant's appearance and demeanor at a hearing. *See Macia v. Bowen*, 829 F.2d 1009, at 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985). The regulations and SSR 96-7p allow an ALJ to consider his or her observations of the claimant in assessing the credibility of the

claimant's allegations. *See* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded by* SSR 16-3p.

It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's pain did not cause disabling limitations and instead shows that she could perform a reduced range of medium work.

## IV. Conclusion

Upon review of the administrative record, and considering all of Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 29, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704